SAMPSON v. DONALDSON et al.

(Circuit Court, D. Minnesota, Fourth Division. June 13, 1894.)

PATENTS—LIMITATION BY PRIOR STATE OF ART—VALVE-RESEATING TOOLS.

In the Wright patent, No. 400,989, for an improvement in valve-seat dressing tools, claim 1, for the combination, with a revoluble shaft, of a file connected to its lower end, of a size to cover at one time only part of the surface to be dressed, whereby the file is rendered self-clearing, must be limited, in view of the prior state of the art, to the oblong form of cutter or file shown and described, although the description covers a cutter of any form having a broken periphery, and states that the material point is that the file surfaces be not continuous; and hence the claim is not infringed by machines made under the Morse patents, Nos. 439,939 and 456,704, having cutters or files of different design.

This was a suit by Sampson against Donaldson and others for infringement of a patent.

P. H. Gunckel, for complainant.

Paul & Hawley (A. C. Paul, of counsel), for defendants.

NELSON, District Judge. Suit is brought against the defendants for an alleged infringement of letters patent No. 400,989, granted upon the application of Pliny J. Wright, dated April 9, 1889. It is admitted that the title of complainant is as alleged in the bill, and also that the defendants' machine is the Morse valve-reseating machine, manufactured by the Leavitt Machine Company, of Orange, Mass., under patents issued to Charles L. Morse, No. 439,939, dated June 10, 1890, and No. 456,704, dated July 28, 1891. The defenses relied upon are invalidity of patent, want of novelty, and noninfringement.

The invention relates to devices adapted to be used in a suitable machine for leveling and retruing the seats of steam and other valves without removing the valve bodies from their positions, and in the specification it is stated:

"My invention relates to valve-seat dressing tools, and is in the nature of an improvement on the construction shown in the patent granted to myself and Samuel Rust of date May 29, 1883, under No. 278,478. In my former patent I used a disk-shaped cutter on the end of a revoluble tool shaft, and a guide below the tool, adapted to fit the opening in the valve seat for the purpose of centering the cutter. In practice, however, I found that this construction was imperfect. I found that the guide in the valve-seat opening could not be relied on to hold the tool shaft at right angles to the valve seat, and therefore a true surface could not be produced. I found that the disk cutter would not clear itself of the filings. I also found it impracticable to get sufficient pressure on the tool without throwing it off its center. My present invention was designed to overcome these defects, and it consists of the construction hereinafter described, and particularly pointed out in the claims.

"E is a cutter head or bearing disk on the lower end of said shaft, formed integral therewith. The lower end of the tool stem is provided with a screw-threaded hole in the line of its axis. F is the cutter, provided with a small

central hole, f. I is a headed retaining screw, whose stem passes through the hole in the cutter, and engages with a screw-threaded hole in the stem of the tool shaft, thus removably securing the cutter head. The cutter, F, is of a special construction. It is in shape like the frustrum of an oblong pyramid. The lower surface, f', has a file finish, with diagonal grooving, and its inclined surfaces, f'', are also files with diagonal grooves. This constitutes a flat and a conical file in one piece, both of which are self-clearing. The flat file face adapts the cutter to dress the horizontal valve-seats and the conical file face to the conical valve seats. In virtue of its oblong shape and the diagonal grooving of the file surfaces it is self-clearing. It does not clog with the filings.

"It will be understood that instead of making the cutter with both the flat and the inclined file surfaces separate cutters may be used for the two classes of seats,—cutters with oblong flat file surfaces for dressing flat valve seats, and oblong cutters with inclined file surfaces for the ball-valve seats. The material point is that the file surfaces on the cutter be not continuous. There must be clearing spaces between them. The cutter may take any form, having a broken periphery,—as, for example, a star or a cross,—but a continuous surface will not clear itself."

It is charged that the defendants are infringing the first claim of this patent, which is as follows:

"In a valve-reseating device, the combination, with a revoluble shaft, of a file connected to the lower end of said shaft at right angles to its axis, of a size to cover at any one time only a part of the surface to be dressed, whereby the file is rendered self-clearing, substantially as described."

Wright was not the first inventor of a valve-reseating tool. Patents for devices designed to accomplish this result had been previously issued. The general character of all patented tools of this class is the same, and the purpose is to repair valve seats and valve disks which have become, from long use, worn and "out of true." This controversy does not relate to the machine as a whole, but to the cutting tools used in connection with a revoluble shaft employed by both parties, and it is virtually admitted in the specification of the patent that there is no novelty in the combination with a revoluble shaft of a file connected to the lower end of said shaft at right angles to its axis. The novelty of the invention would appear to be, as expressed in the claim, that the file is of a size to cover at any one time only a part of the surface to be dressed, whereby the file is rendered self-clearing as described. The specification describes this file as follows:

"The cutter, F, is of a special construction." It is in shape like the frustrum of an oblong pyramid. The lower surface, f', has a file finish, with diagonal grooving, and its incline surfaces, f'', are also files with diagonal grooves. This constitutes a flat and a conical file in one piece, both of which are self-clearing. The flat file face adapts the cutter to dress the horizontal valve seats and the conical file face to the conical valve seats. In virtue of its oblong shape and the diagonal grooving of the file surfaces, it is self-clearing. It does not clog with the filings."

The novel features of these cutting tools, and their advantages over the previous patent and the prior art, are claimed by counsel for complainant to be: (1) That they may be made with little expense, from bars of steel; (2) that they may be entered into the cap openings of valves (by tilting them), where disk-shaped cutters of like cutting capacity could not enter; (3) that they have the capability of being self-clearing; (4) that they are easily operated

by hand power for truing valve seats. The only feature of novelty or the claim of novel result set forth in the specification of the first claim of the patent is that the file described in the invention is self-clearing. The complainant's expert Dayton, in his testimony, after stating that the cutter referred to in the first claim is adapted to work accurately and satisfactorily with the revoluble shaft of reseating machines of the general character shown in the patent, says:

"The cutter so formed is also adapted to clear itself of the cuttings. This is a matter of the utmost importance, * * * and this characteristic advantage is especially mentioned in the claim quoted and sued on."

The invention was designed to overcome the defects in the operation of the cutter used in patent No. 278,478, and the construction of the cutter was suggested in the specification, and particularly pointed out in the claim. It was old in various kinds of dressing devices to provide cutters, used in connection with revoluble shafts of a size to cover at any one time only a part of the surface to be dressed, whereby the cutter was rendered self-clearing. This is clearly shown in some of the patents offered in evidence by the defendants. The patentee, however, in his description of the cutter, states:

"It will be understood that, instead of making the cutter with both the flat and the inclined file surfaces, separate cutters may be used for the two classes of seats,—cutters with oblong flat file surfaces for dressing flat valve seats, and oblong cutters with inclined file surfaces for the ball-valve seats. The material point is that the file surfaces on the cutter be not continuous. There must be clearing spaces between them. The cutter may take any form having a broken periphery,—as, for example, a star or a cross,—but a continuous surface will not clear itself."

The complainant's expert, Dayton, while he admits that other cutters have been provided with clearing spaces, says that none have been provided with clearing spaces by giving them the oblong form shown and described in the patent in suit. He also says that in his opinion "claim No. 1 should be restricted to the form of the cutter shown in the drawings, or, in other words, to the oblong form thereof as distinguished from star or cross shaped, which are referred to in the specification as possible forms of the invention," and it is this form he thinks which constitutes the novelty of the invention; so that, according to his opinion, the peculiar shape of the cutter, which, being oblong, covers at one time only a part of the surface to be dressed, and gives clearing spaces, is the special novelty claimed, and makes this device a substantial advance over the prior art. The patentee states that in making the cutter "the material point is that the file surfaces on the cutter be not continuous," and he confines his invention only to a cutter of any form having a broken periphery. There is no such limitation in the form of the cutter as given by the expert Dayton, and, in my opinion, if the first claim of the patent can be sustained, it must be limited, in view of the state of the art, to a combination with a revoluble shaft of cutters or files of a design not used by the defendants. There is no infringement, and the bill of complainants is dismissed, with costs.